<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| GILBERT NICKENS, Jr., | : | |
| | : | Case No. 20-14489 (BRM) (AME) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MERCER COUNTY CORRECTIONAL CENTER, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are Motions for Summary Judgment filed by Defendant CFG Health Systems, LLC ("CFGHS") (ECF No. 67) and Defendants Charles Ellis and Brian M. Hughes (ECF No. 69), seeking judgment in their favor on Plaintiff Gilbert Nickens's ("Plaintiff") § 1983 claims against them. Plaintiff filed an opposition (ECF Nos. 92 and 93), Defendants Ellis and Hughes filed a reply (ECF No. 100), and Defendant CFGHS filed a reply (ECF Nos. 101 and 102). Having reviewed the parties' submissions filed in this matter and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, Defendant's CFGHS Motion for Summary Judgment is **GRANTED**, and Defendants Ellis and Hughes's Motion for Summary Judgment **GRANTED in part and DENIED in part**.

**I.   BACKGROUND**

Plaintiff, a prisoner currently confined at the Federal Correctional Institution McKean, is proceeding with this civil rights matter seeking relief pursuant to 42 U.S.C. § 1983. At the time of the events relevant here, Plaintiff was a pretrial detainee housed at the Mercer County Correctional

Center ("MCCC") in New Jersey. On October 15, 2020, Plaintiff filed his civil rights complaint ("Complaint"). (ECF No. 1.) Plaintiff named the following Defendants in his complaint: (1) MCCC; (2) Warden Charles Ellis; (3) Brian M. Hughes; (4) CFGHS[1]; (5) Governor Phil Murphy; and (6) New Jersey Attorney General Gurbir Grewal. (*See id.*) On October 27, 2020, upon screening the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the Court issued a Memorandum and Order proceeding Plaintiff's claims against Defendants Ellis, Hughes, and CFGHS and dismissing the remaining Defendants. (ECF No. 3.)

On April 14, 2022, Defendants CFGHS, Ellis, and Hughes filed Motions for Summary Judgment. (ECF Nos. 67 and 69.) The Motions seek dismissal of Plaintiff's Fourteenth Amendment conditions of confinement and failure to provide adequate medical treatment claims against Defendants. (*See id.*)

Plaintiff was detained at MCCC starting on January 27, 2020. (ECF No. 69-2 at 7, Defendants Ellis and Hughes's Statement of Facts.) The Complaint raises issues regarding the conditions of confinement at MCCC during the COVID-19 and Defendant CFGHS's failure to provide adequate medical treatment and answer sick call slips. (*See* ECF No. 1.)

In March 2020, the COVID-19 pandemic struck New Jersey and New Jersey Governor Phillip Murphy and Defendant Hughes issued Executive Orders to protect the citizens of New Jersey and Mercer County. (ECF No. 69-2 at 7; *see* ECF Nos. 69-5, Executive Order No. 103 and 69-6, Executive Order 2020-01.) To combat the spread of COVID-19, Defendant Ellis, Warden of MCCC, promulgated and implemented a number of policies and procedures to address the COVID-19 pandemic, including but not limited to: (1) cancellation of inmate screen visits; (2) establishing standards for new commitment transfers; (3) adoption of Standard Operating Procedure 990, "Pandemic/Epidemic Disease Containment"; (4) cancelation of all inmate contact and non-contact visits; and (5) institution

---

[1] The Complaint refers to Defendant CFGHS as CFH Health Services, Inc. (*See* ECF No. 1.)

of a mask policy for staff. (ECF No. 69-3 at ¶ 5, Certification of Warden Charles Ellis.) To help protect inmates at MCCC the following steps were initiated: (1) implementation of New Jersey Department of Correction's ("NJDOC") screening questionnaire for transfers to NJDOC facilities; (2) temperature scanning administrated by medical staff; (3) COVID-19 tests administered to inmate who wished to undertake same; and (4) once COVID-19 vaccines were available, they were administered to staff and inmates who wished to receive them. (*Id.* at ¶ 6 and 7.) MCCC was certified as being in compliance with NJDOC rules and regulations during the time set forth in Plaintiff's Complaint, January 28, 2020 through September 28, 2020. (*Id.* at ¶¶ 8-9.)

Plaintiff submits Defendants Ellis and Hughes had no mask policy, overpopulated the jail after the Center for Disease Control ("CDC") called for social distancing, lacked COVID-19 testing, and failed to protect inmates from the transmission of COVID-19. (*See* ECF No. 1; *see also* ECF No. 92.) The Complaint alleges numerous "health and safety violations" regarding the conditions at MCCC. Plaintiff alleges there was no running showers for months and no working water fountains. (*See* ECF No. 1.) Plaintiff alleges he was not given clean clothes or linens. (*See* ECF No. 92.)

Plaintiff tested positive for COVID-19 on May 13, 2020. (ECF No. 92 at ¶ 6, Plaintiff's Statement of Facts.) On May 28, 2020, Plaintiff was prescribed 500 mg oral tablets of Vitamin C. (ECF No. 102 at 6.) On June 4, 2020, Plaintiff tested negative for COVID-19. (*Id.* at 5.) Plaintiff first sought treatment for a cough by way of a Health Services Request Form ("HSRF") dated November 1, 2020.[2] (ECF No. 67-2 at ¶¶ 25, Defendant CFGHS Statement of Undisputed Material

---

[2] Defendant CFGHS attaches to their motion for summary judgment numerous medical records showing that Plaintiff received signification treatment from November 2020 through October 2021 for a persistent cough and was he was diagnosed with seasonal allergies. (*See* ECF No. 67-2 at ¶¶ 24-61, Defendant CFGHS Statement of Undisputed Material Facts (citing ECF No. 68, Plaintiff's Medical Records).) The Court notes that Plaintiff filed his Complaint in October 2020, alleging Defendant CFGHS failed to provide medical treatment prior to the date Plaintiff filed his Complaint.

3

Facts, citing ECF No. 68, Plaintiff's Medical Records.) Plaintiff was transferred to Monmouth County Corrections Center on February 17, 2022. (*See* ECF No. 69-10.)

On April 14, 2022, Defendants CFGHS, Ellis, and Hughes filed Motions for Summary Judgment. (ECF Nos. 67 and 69.)

## II.     LEGAL STANDARD

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The mere existence of an alleged disputed fact is not enough. Rather, the opposing party must prove that there is a genuine issue of a material fact. *Id.* An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is material if, under the governing substantive law, a dispute about the fact might affect the outcome of the lawsuit. *Id.* Factual disputes that are irrelevant or unnecessary will not preclude summary judgment. *Id.*

On a summary judgment motion, the moving party must first show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. To meet its burden, the nonmoving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Thus, the nonmoving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light

most favorable to the nonmoving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

### III. DECISION

#### A. Eighth Amendment Failure to Provide Medical Treatment

The Complaint alleges Defendant CFGHS failed to provide medical treatment, including not answering sick call slips in a timely manner. (ECF No. 1 at 4.)

A pretrial detainee's claim of inadequate medical care arises under the Fourteenth Amendment, rather than the Eighth Amendment. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Nevertheless, the United States Supreme Court has held that the Fourteenth Amendment affords pretrial detainees protections that are "at least as great" as those afforded to convicted prisoners under the Eighth Amendment. *See id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Therefore, in the context of claims for inadequate medical care, the Third Circuit has "found no reason to apply a different standard than that set forth in *Estelle* [*v. Gamble*, 429 U.S. 97 (1976)] (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment." *See id.*

The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires prison officials to provide inmates with adequate medical care. *Estelle*, 429 U.S. at 103–04. In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). A plaintiff alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to

be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

Defendants CFGHS argue that they are entitled to summary judgment on Plaintiff's § 1983 claim for deliberate indifference to Plaintiff's serious medical needs because Plaintiff's has failed to show that he had a serious medical need or that Defendants acted with deliberate indifference in treating Plaintiff. (*See* ECF No. 67-3.) Plaintiff replied arguing Defendants CFGHS were deliberately indifferent to Plaintiff's serious medical needs when he was diagnosed with COVID-19 and they failed to treat him until months after the fact. (ECF No. 93.)

Here, Plaintiff fails to point to record evidence to show that he had a serious medical need. The evidence show that Plaintiff tested positive for COVID-19 on May 13, 2020. (ECF No. 92-6.) However, Plaintiff fails to submit any evidence or make any argument regarding what symptoms Plaintiff was experiencing due to his COVID-19 infection. Plaintiff does not allege that he had any underlying condition that would make contracting COVID-19 a serious medical condition. Absent additional information, it is unclear that COVID-19, as it affected Plaintiff, presented a serious medical need.

Even assuming that Plaintiff's COVID-19 presented a serious medical need in this case, Plaintiff fails to provide evidence or make any argument to show that he required certain treatment that was not provided. The medical records provided to the Court indicated that after Plaintiff was diagnosed with COVID-19 on May 13, 2020, he was prescribed 500 mg of Vitamin C on May 28, 2020. (ECF No. 102 at 6.) Plaintiff was then seen again on June 4, 2020, at which time he tested negative for COVID-19. (*Id.* at 5.) On July 9, 2020, Plaintiff was seen for a sick call and complained of right shoulder and right knee pain for the previous three months. (*Id.* at 3.) There is no indication that Plaintiff complained of any COVID-19 symptoms at that time. (*Id.*) Plaintiff

was again seen on October 6, 2020, for shoulder and knee pain, with no complaints of COVID-19 symptoms. (*Id.* at 2.) Plaintiff attached to his opposition Health Service Request forms for June, August, and September 2020, in which Plaintiff requests to be seen for shoulder and knee pain and requests to have his blood sugar tested. (ECF No. 92-8 at 2-4.) Plaintiff did not request treatment for any COVID-19 symptoms in those Health Service Request forms. Plaintiff has failed to allege facts to show that he was experiencing serious symptoms and Defendants CFGHS refused to provide him treatment for those symptoms. Plaintiff has not presented facts to show that Defendants CFGHS were aware of Plaintiff's need for medical treatment for COVID-19 and refused said treatment. *Rouse*, 182 F.3d at 197.

Plaintiff fails to plead facts or present evidence to show that Defendant GFGHS was aware of any serious symptoms Plaintiff was experiencing, nor does he plead facts that there was certain treatment he needed and Defendant CFGHS failed to provide the care needed. Therefore, Defendant's motion for summary judgment will be granted as to the Eighth Amendment failure to provide medical care claim.

### B. Eighth Amendment Conditions of Confinement

Plaintiff alleges that the conditions of his confinement while he was a pretrial detainee at MCCC violated his constitutional rights. Plaintiff raises two conditions of confinement claims. First, Plaintiff alleges that MCCC lacked laundry service, working showers, and working water fountains, and detainees were required to clean themselves in the sink. Second, Plaintiff alleges the Defendants Hughes and Ellis failed to take appropriate measure to protect him from COVID-19.

In accordance with the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520, 549 (1979), officials may not punish detainees before a court convicts them. *Hubbard v. Taylor*, 538

F.3d 229, 231 (3d Cir. 2008) (*Hubbard II*). To establish a constitutional violation under the Fourteenth Amendment, a pretrial detainee plaintiff would have to plausibly allege that the challenged conditions of confinement amount to "punishment." *See Bell*, 441 U.S. at 538 ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."); *see also Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) ("Given pretrial detainees' federally protected liberty interests . . . under the Due Process Clause . . . a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.").

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

"[T]he ultimate question" is whether conditions are "reasonably related to a legitimate governmental objective." *Hubbard II*, 538 F.3d at 236 (quoting *Bell*, 441 U.S. at 549). The Third Circuit instructs courts to consider the totality of the circumstances of confinement, including any genuine privations over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose. *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 326 (3d Cir. 2020) (citing *Hubbard v. Taylor*, 399 F.3d 150, 159-60 (2005) (*Hubbard I*)). A denial of the "minimal civilized measure of life's necessities," and conditions which are unsafe, unsanitary and inadequate that do not appear reasonably related to a

9

legitimate, non-punitive governmental objective is sufficient to state an actionable constitutional deprivation. *Rhodes v. Champman*, 452 U.S. 337, 347 (1981).

To satisfy the subjective component of the analysis, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

The Court will first address the conditions at MCCC regarding laundry, showers, and working water fountains. Defendants Hughes and Ellis move for summary judgment on this claim, arguing that Plaintiff's vague allegations regarding showers and water fountains do not rise to the level of a constitutional violation. (ECF No. 69-2 at 11-15.) In support of their argument, Defendants Hughes and Ellis cite to a string of cases that are distinguishable from the facts here for the reasons discussed below. (*Id.* at 13-14, citing *Adderly v. Ferrier*, 419 F. App'x 135 (3d Cir. 2011) (finding deprivation of clothing and shower for seven days was harsh but not a deprivation of the minimal civilized measure of life's necessities); *Davis v. Scott*, 157 F.3d 1003 (5th Cir. 1998) (finding inmate being placed in a cell that was "just filthy with blood on the walls and excretion on the floors and a bread loaf on the floor" for three days did not meet the objective component of the Eighth Amendment); *Smith v. Copeland*, 87 F.3d 265 (8th Cir. 1996) (holding

10

that an inmate's confinement in a cell for four days without an overflowing toilet, during which time he was "made to endure the stench of [his] own feces and urine," did not rise to the level of a constitutional violation); *George v. Faber*, 2010 U.S. Dist. LEXIS 69052 (D. Del. July 12, 2010) (dismissing conditions of confinement claim as frivolous where, inter alia, plaintiff had "no running water [and] no toilet (just a hole in the ground)" and a "cell with no toilet paper and lack of water"); *Carson v. Main*, 2015 U.S. Dist. LEXIS 52775 (D.N.J. Apr. 15, 2015) (dismissing Plaintiff's Fourteenth Amendment claim where neighboring cells shared plumbing pipes and required residents to flush their own toilet to dispose of the neighboring cell's waste.)).

Plaintiff's opposition to Defendants Hughes and Ellis's motion for summary judgment alleges that there were no working showers, causing him to wash in a cold water sink. (ECF No. 92 at 8.) Plaintiff also alleges that he was given one set of clothing, with no means of washing them. (*Id.*) Plaintiff argues "to go more than two years without a shower, is wanton and unnecessary." (*Id.* at 13.) Plaintiff claims it caused body rashes. (*Id.*) Plaintiff submits that for more than 760 days he was forced to wear the same clothing, which caused "scratching, itch[y] skin, and rashes." (*Id.* at 14.)

Plaintiff attaches a grievance addressed to Defendant Ellis dated March 9, 2020, in which Plaintiff complains of not have a running shower in the MCCC for 30 days. (ECF No. 92-13 at 1.) On March 29, 2020, Plaintiff submitted a grievance, alleging that he wore the same articles of clothing since he entered MCCC and was requesting to be able to wash them. (*Id.* at 2.) Plaintiff filed another grievance on May 21, 2020, complaining that he wanted clean clothes and to be able to shower. (*Id.* at 4.) While it appears that Plaintiff is arguing that MCCC did not have a working shower or laundry for two years, at a minimum his grievances indicate that there was not a working shower or laundry for approximately four months. The above cited cases, on which Defendants

Hughes and Ellis rely, are all regarding conditions that last a week or less or were dismissed for lack of personal involvement of the defendants. Those cases are distinguishable from the facts presented by Plaintiff.

Defendants Hughes and Ellis replied to Plaintiff's opposition but failed to address Plaintiff's allegations that these unsanitary conditions persisted over a prolonged period of time. Considered in totality, Plaintiff's allegations could lead a reasonable factfinder to conclude that Plaintiff was denied the "minimal civilized measure of life's necessities." Not allowing a pretrial detainee access to a shower or laundry for at least four months is not a "*de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539, n. 21. A reasonable jury could conclude that the denial of a shower caused Plaintiff to endure genuine privations and hardship over an extended period of time. *Id.* at 542. Therefore, Defendants Hughes and Ellis's motion for summary judgment is denied regarding this issue.

The Court will next address Plaintiff's conditions of confinement claim regarding the alleged inadequacies in the COVID-19 protocols at MCCC and whether they violated Plaintiff's constitutional rights.

In assessing whether conditions and restrictions are excessive given their purposes, the courts must acknowledge that practical considerations of detention justify limitation on "many privileges and rights." *Bell*, 441 U.S. at 545–46. Though not a convicted prisoner, a pretrial detainee "simply does not possess the full range of freedoms of an unincarcerated individual." *Id.* at 546. As the Supreme Court cautioned in *Bell*:

> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to

> indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to the expert judgment in such matters.

441 U.S. at 540 n.23. In *Hope*, immigration detainees alleged that due to their ages and medical conditions, their confinement at county jails during the COVID-19 pandemic amounted to punishment and/or deliberate indifference to their serious medical needs. 972 F.3d at 325. Although the Third Circuit agreed that the detainees' particular vulnerabilities could be assessed in determining whether their conditions of confinement amounted to punishment, the court rejected the detainee's arguments that exposure to COVID-19 was per se unconstitutional and that the government must entirely eliminate the detainees' risk of exposure in order to comply with constitutional mandates. *See id.* at 329. The Third Circuit also warned against using "ideal" responses to COVID-19, such as keeping six feet of separation (*i.e.* social distancing), "as the sine qua non of constitutional detention," even for individuals at higher risk of serious harm if they contract COVID-19. *See id.* at 327. The deference to prison officials' judgment is especially strong in the context of an "unprecedented" situation like COVID-19, where "responsive measures [were] specifically implemented to detect and to prevent spread of the virus." *Hope*, 972 F.3d at 327 (concluding that conditions of confinement during COVID-19 did not amount to unconstitutional punishment); *McClain v. United States*, No. 21-4997 (SDW), 2021 WL 4820629, at *3–4 (D.N.J. Oct. 15, 2021) (dismissing without prejudice conditions-of-confinement claim by pretrial detainee where "restrictions confining prisoners to their cells for the majority of their days and denying in person family visits during COVID-19-related lockdowns" were "rationally related to a legitimate purpose – controlling the threat of COVID-19").

Here, Plaintiff alleges that Defendants Hughes and Ellis acted recklessly by over populating MCCC after the CDC called for social distancing, had no mask policy for inmates, and

13

had no real safety measures to keep inmates safe. (*See generally* ECF No. 92.) Defendants Hughes and Ellis's Motion for Summary Judgment argues that Defendants implemented a myriad of efforts to protect all detained at the MCCC. (ECF No. 69-2 at 8-9.) Defendants have attached to their motion a certification of Defendant Warden Charles Ellis. (*See* ECF No. 69-3.) As explained above, Defendant Ellis promulgated and implemented a number of policies and procedures to address the COVID-19 pandemic, including but not limited to: (1) cancellation of inmate screen visits; (2) establishing standards for new commitment transfers; (3) adoption of Standard Operating Procedure 990, "Pandemic/Epidemic Disease Containment"; (4) cancelation of all inmate contact and non-contact visits; and (5) institution of a mask policy for staff. (ECF No. 69-3 at ¶ 5, Certification of Warden Charles Ellis.) To help protect inmates at MCCC, the following steps were initiated: (1) implementation of New Jersey Department of Correction's ("NJDOC") screening questionnaire for transfers to NJDOC facilities; (2) temperature scanning administrated by medical staff; (3) COVID-19 tests administered to inmate who wished to undertake same; and (4) once COVID-19 vaccines were available, they were administered to staff and inmates who wished to receive them. (*Id.* at ¶ 6 and 7.) MCCC was certified as being in compliance with NJDOC rules and regulations during the time set forth in Plaintiff's Complaint, January 28, 2020 through September 28, 2020. (*Id.* at ¶¶ 8-9.)

The record evidence supports Defendants Hughes and Ellis's assertion that measures were taken to reduce the transmission of COVID-19. Aside from Plaintiff's allegations, Plaintiff has failed to point to evidence in the record to show that no steps were taken to combat the spread of COVID-19. Given the evidence of record showing that the county and prison supervisors had policies in place, Plaintiff has not shown that Defendants Hughes and Ellis were deliberately indifferent to the risk of harm to Plaintiff. *See Hope*, 972 F.3d at 329 ("Considering all the

responsive measures specifically implemented to detect and to prevent spread of the virus, the challenges of facility administration during an unprecedented situation, and the purposes served by detention—Petitioners did not show a substantial likelihood of success on their claim that the conditions of their confinement constitute unconstitutional punishment."); *see also Bevins v. Kauffman*, No. 20-2012, 2021 WL 322168, at *5 (M.D. Pa. Feb. 1, 2021) ("A review of these steps suggests that DOC officials, including Defendants, have not acted unreasonably with respect to the threat posed by COVID-19 and instead have instituted measures to safeguard the entire inmate population, including Plaintiff."); *see also Wilkins v. Wolf*, No. 20-2450, 2021 WL 1578250, at *6-7 (M.D. Pa. Apr. 22, 2021) (finding that inmate-plaintiff had failed to state an Eighth Amendment claim regarding an alleged inadequate response to the COVID-19 pandemic). Plaintiff has failed to produce evidence that Defendants Hughes and Ellis were deliberately indifferent to the conditions at MCCC. Accordingly, Defendants Hughes and Ellis's Motion for Summary Judgment in granted regarding Plaintiff's Eighth Amendment conditions of confinement claim as it pertains to COVID-19 only.

## IV. CONCLUSION

For the reasons expressed above, Defendant's CFGHS Motion for Summary Judgment is **GRANTED**. (ECF No. 67.) Accordingly, Plaintiff's Complaint is dismissed as to Defendant CFGHS.

Defendants Ellis and Hughes's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. (ECF No. 69.) Defendants Ellis and Hughes's Motion for Summary Judgment is **GRANTED** as to Plaintiff's Eighth Amendment conditions of confinement claim as the measure to prevent the spread of COVID-19. Defendants Ellis and Hughes' Motion for

Summary Judgment is **DENIED** as to Plaintiff's Eighth Amendment conditions of confinement as to the prison showers, water fountains, and laundry.

An appropriate order follows.

Dated: December 5, 2022

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**
